# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

CLAUD E. BURT, )
 )
       Plaintiff, )
 )
v. ) Case No. CIV-09-328-KEW
 )
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
 )
       Defendant. )

## OPINION AND ORDER

Plaintiff Claud E. Burt (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on July 31, 1961 and was 47 years old at the time of the ALJ's. Claimant completed his education through the twelfth grade. Claimant worked in the past as welder and general petroleum laborer. Claimant alleges an inability to work beginning

3

June 30, 2001 due to depression, severe mood disorder, and schizophrenia. Claimant also asserts he suffers from seizures, vision problems, back pain, sleep problems, difficulties with reading and writing, and problems with medications.

**Procedural History**

On June 23, 2006, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, et seq.) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On March 25, 2009, a hearing was conducted by ALK Glenn Neel in McAlester, Oklahoma. On June 10, 2009, the ALJ issued an unfavorable decision. On July 30, 2009, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that Claimant suffered from severe impairments but did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of light work with limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in failing to: (1) find Claimant met a listing at step three; (2) find Claimant was illiterate at step five; and (3) adequately develop the administrative record.

## Listing Analysis

Claimant first contends the ALJ should have determined he met Listings 12.03 and 12.04. On September 20, 2006, Claimant was evaluated by Dr. Therea Horton for a mental status examination. Recognizing Dr. Horton believed Claimant to be "a questionable historian," Claimant reported he had experienced seizures since he was 16 years old. He stated he had fallen while working on two occasions and reportedly had problems with employment due to a fear of falling, including employment as a welder because he had to go up high. Claimant told Dr. Horton his daughter had been killed about 5 years before and began to experience severe depression. Claimant stated he heard the voice of his father. (Tr. 204). Claimant took medication to control this condition. (Tr. 205).

Dr. Horton found Claimant took care of his personal hygiene and that he has a friend who reminds him to do so and to take his medication daily. Id. Dr. Horton described Claimant as casually dressed and poorly groomed with very poor social skills. (Tr.

5

206). She states that Claimant has difficulty being motivated to initiate a task. (Tr. 205). His thought processes are logical but quite tangential. He had a history of significant spiritual visions that are related to his religious beliefs. Claimant has a history of auditory and visual hallucinations and a history of feeling as though others are watching and judging him and conspiring against him. Claimant's mood was predominantly depressed. His recall was somewhat impaired and his memory was intact. Claimant's concentration was very poor and he appeared to have a limited fund of information and was of low, average intelligence. Claimant also exhibited inappropriate judgment. (Tr. 206-07). Dr. Horton diagnosed Claimant at Axis I: Schizoaffective Disorder, Depressed Type; Axis II: None; Axis III: Seizure Disorder, Chronic Pain/Neuropathy; Axis IV: Finances, access to health care, housing, transportation, isolation. (Tr. 207).

On September 20, 2006, a Psychiatric Review Technique ("PRT") was prepared on Claimant by Dr. Janice B. Smith. Dr. Smith noted Claimant suffered from Affective Disorders under 12.04 as evidenced by a depressive syndrome characterized by sleep disturbance, difficulty concentrating or thinking, and hallucinations, delusions, or paranoid thinking. (Tr. 208, 211). Dr. Smith found Claimant suffered from schizoaffective disorder, which is

6

characterized on the form as "[a] medically determinable impairment" "that does not precisely satisfy the diagnostic criteria" set out on the form. (Tr. 211). In Part B of the PRT, Dr. Smith found moderate restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence or pace. (Tr. 218). Dr. Smith concludes in her Consultant's Notes that "Claimant appears to be able to do simple work without public contact, as long as he is treatment compliant." (Tr. 220).

On June 18, 2007, Dr. Larry Vaught conducted a mental status examination on Claimant. He found Claimant's explanation of his activities of daily living revealed he lives in a trailer on property belonging to this girlfriend. Claimant is provided electricity through a connection to her house. He does not have running water but typically bathes in a creek, in part, because he does not like to be enclosed in a bathroom or bathtub. He does not do laundry or cleaning because he does not care. Claimant does not drive - he was driven to the examination by his girlfriend. He does not do much cooking, but will eat out if he can. (Tr. 262).

Dr. Vaught performed the WAIS-III test on Claimant. He found Claimant obtained a Verbal IQ of 52, Performance IQ of 47, and a Full Scale IQ of 45. The 90% Confidence Interval for the Full Scale IQ range was from 43 to 50. Claimant was somewhat "flippant"

7

in approaching the test. His concentration was poor and he did not seem concerned about his performance. At times, his responses seemed incongruous. (Tr. 263).

Dr. Vaught concluded that in areas of social functioning, Claimant presented as a somewhat agitated and flippant individual with some affective lability. In areas of daily living, he does not really make much of an effort to cook, clean or do laundry, he often drifts off in a daze, which may be secondary to his seizure disorder. In areas of concentration, persistence or pace, pace was slowed. Persistence was very poor. He could not remember even two digits forward, or answer simple questions or construct very simple block designs. Dr. Vaught found this somewhat inconsistent with his premorbid history of welding. Claimant's Adaptive Behavior Composite standard score of 63 placed him in the range of mental retardation. (Tr. 264).

In his decision, the ALJ found Claimant's mental impairment does not meet or medically equal the criteria for listings 12.03 and 12.04. The ALJ states he considered the "paragraph B" criteria but found Claimant only had moderate restrictions in activities of daily living, social functioning and concentration, persistence or pace rather than marked restrictions. He also found no episodes of decompensation of an extended duration. (Tr. 15).

Claimant contends the ALJ erred by not discussing the

8

"paragraph A" criteria for both Listing 12.03 and 12.04. In order to meet these listings, a claimant must meet the criteria in both paragraph A to "substantiate medically the presence of a particular mental disorder" and paragraph B to describe "functional limitations that are incompatible with the ability to do any gainful activity." 20 C.F.R. Subpt. P., App. 1, § 12.00(A). The ALJ certainly could have provided a more complete analysis of his paragraph A findings in his decision. His evaluation of the paragraph B criteria, however, finds adequate foundation in the medical record to find that it is supported by substantial evidence. The fact the ALJ's discussion of paragraph A is somewhat wanting is not fatal to the decision since both paragraphs' criteria must be met. In asserting a condition meets a listing, a claimant bears the burden of demonstrating that his impairment "meet[s] all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severe, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). Claimant did not meet his burden in this case for meeting the criteria for Listing 12.03 or 12.04 considering the medical evidence developed in the case. The ALJ's findings at step three are consistent with Dr. Horton's findings and, therefore, substantial evidence supports his conclusions.

9

## Application of the Grids

Claimant next contends the ALJ erred in applying the Grids to direct a finding of non-disability because Claimant' illiteracy coupled with the ALJ's RFC assessment finding he was limited to sedentary work should have directed a finding of disability. In his decision, the ALJ determined in evaluating his RFC that Claimant could lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk (with normal breaks) for a total of 2 hours in an 8 hour workday, and sit (with normal breaks) for a total of 6 hours in an 8 hour workday. He was found to be able to occasionally climb, balance, stoop, kneel, crouch, and crawl. He must avoid all hazards, such as moving machinery and unprotected heights, and should not drive as a part of his work. In terms of mental limitations, Claimant was determined to be able to understand, remember, and carry out simple, but not detailed, tasks that do not require intense concentration, work under routine supervision, complete a normal workday and workweek from a mental standpoint, and adapt to a work setting. He is not able to relate effectively to the general public, but can relate superficially to coworkers and supervisors for work purposes. (Tr. 16).

The ALJ also made a finding that Claimant "has at least a high school education and is able to communicate in English." He then

applied the Grids in concluding Claimant was not disabled. (Tr. 20).

The burden shifts to Defendant at step five to demonstrate a claimant retains sufficient RFC to perform work in the national economy, given his age, education, and work experience. Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(citation omitted). In order to help evaluate the step five requirement, whether or not there are sufficient jobs in the economy that the claimant can perform given his or her age, education, and work experience, the Social Security Administration has created Medical-Vocational Guidelines, also known as "the grids." See 20 C.F.R. § 404.1567; 20 C.F.R. Pt. 404, Subpt. P, App. 2; Trimiar v. Sullivan, 966 F.2d 1326, 1332 (10th Cir. 1992). Five degrees of residual functional capacity are outlined in the grids by general exertional level-sedentary, light, medium, heavy, and very heavy exertion. 20 C.F.R. § 404.1569a; Trimiar, 966 F.2d at 1332 n. 22. Residual functional capacity reflects "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(c). If the ALJ finds that a claimant's exertional capacity, education, age, and skills fit precisely within the criteria of a particular grid level, the ALJ may conclude the

claimant is not disabled. Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The ALJ stated Claimant could communicate in English but did not make a specific, express finding on Claimant's literacy. "Illiteracy" is defined under the regulations as the inability to read or write. 20 C.F.R. § 416.964(b)(1). An example of illiteracy is given as when "the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." Id.

Substantial evidence exists in the record to call Claimant's literacy into question. In December of 2005, Dr. Myra Gregory found Claimant was unable to read in connection with the renewal of his medication. (Tr. 244). Claimant informed Dr. Matt West in August of 2006 that he graduated from high school but never learned how to read. (Tr. 187). Dr. West found him to be illiterate. (Tr. 189). In the September 20, 2006 evaluation, Claimant informed Dr. Horton that he graduated from high school but welded and built gates for the principal and superintendent and passed English by copying the questions and answers down. He failed the 8th grade and did not learn to read. School officials made special efforts to help him complete his high school education. (Tr. 206). Claimant was given an oral rather than written driver's examination to obtain a license. He was "socially promoted" in school despite

the fact he had low academic functioning. (Tr. 257). Claimant also informed Dr. Vaught he could not read or write. (Tr. 263-64). Claimant testified that he could not read written instructions and that other workers would complete any required paperwork and he performed the welding. (Tr. 119, 153, 126, 128).

While the ALJ discussed limitations in Claimant's ability to read and write, he did not adequately evaluate whether Claimant met the definition of an illiterate under the regulations. Concomitantly, the ALJ failed to discuss whether the Grids would direct a finding of disability with the inclusion of a finding of illiteracy. 10 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.17. By failing to adequately evaluate the evidence of Claimant's literacy limitations, the ALJ inappropriately applied the Grids in reaching a finding of non-disability. On remand, the ALJ shall reevaluate the evidence pertaining to Claimant's literacy and make the appropriate findings under the applicable listing.

### Duty to Develop the Record

Claimant contends the ALJ failed in his duty to adequately develop the record by not ordering a consultative examination on Claimant's seizure disorder and back pain. The medical record is replete with evidence of Claimant's history of seizures and treatment for seizures. (Tr. 187-92, 228-29, 238, 243, 246-47,

254-55, 262-65). In October of 2005, Dr. Gregory indicated Claimant needed an MRI of his head, an EEG of his head, and further evaluation by a neurologist when Claimant sought treatment for seizures. (Tr. 247). The testing was never performed because Claimant was unable to afford it. Dr. Gregory requested that the OU Medical Center perform the testing because Claimant suffered frequent grand mal seizures. (Tr. 248, 253). Dr. Gregory continued to state the need for an MRI in a December 2005 visit. (Tr. 244). In October of 2006, Dr. Gregory again "shopped" for a facility where Claimant could obtain an MRI and EEG to no avail. (Tr. 255-56).

In relation to Claimant's back problems, the record indicates several evaluating physicians questioned whether adequate diagnostic testing had been performed to adequately evaluate the extent of Claimant's condition. (Tr. 184, 189-92). Dr. West had found decreased extension and flexion and pain with range of motion in August of 2006. Dr. West recommended further evaluation. (Tr. 189-92).

Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987). A social

14

security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). This duty exists even when a claimant is represented by counsel. Baca v. Dept. of Health & Human Services, 5 F.3d 476, 480 (10th Cir. 1993). The court, however, is not required to act as a claimant's advocate. Henrie, 13 F.3d at 361.

The duty to develop the record extends to ordering consultative examinations and testing where required. Consultative examinations are used to "secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision." 20 C.F.R. § 416.919a(2). Normally, a consultative examination is required if

> (1) The additional evidence needed is not contained in the records of your medical sources;
>
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, . . .

(3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;

(4) A conflict, inconsistency, ambiguity or insufficiency in the evidence mus be resolved, and we are unable to do so by recontacting your medical source; or

(5) There is an indication of a change in your condition that is likely to affect your ability to work.

20 C.F.R. § 416.909a(2)(b).

Claimant's seizure disorder has been long-standing, well-documented, and, at times, clearly debilitating. Yet, adequate testing has not been performed to determine the source and extent of his problem. On remand, the ALJ shall fulfill his duty to develop the record by obtaining necessary testing and professional consultative assessments in relation to Claimant's seizure disorder. While not as clear of a deficiency in the record, the ALJ shall consider whether additional testing and evaluations would assist in determining whether Claimant's back problems also affect his ability to work.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the

Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

DATED this 30th day of March, 2011.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE